# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## STATESVILLE DIVISION
## CIVIL CASE NO. 5:22-cv-00134-MR

| | | |
|---|---|---|
| JOHNNIE D. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MONICA BOND, et al., | ) | <u>ORDER</u> |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on initial review of the pro se Complaint. [Doc. 1]. The Plaintiff is proceeding in forma pauperis. [Doc. 9].

The pro se incarcerated Plaintiff filed this action in the United States District Court for the Eastern District of North Carolina pursuant to 42 U.S.C. § 1983, addressing incidents that allegedly occurred at the Alexander Correctional Institution.[1] [Doc. 1]. The case was then transferred to this Court. [Doc. 5].

_____

[1] The Plaintiff's address of record with the Court is at the North Carolina Central Prison. However, according to the North Carolina Department of Public Safety's website, he is now located at the Scotland Correctional Institution. <u>See</u> https://webapps.doc.state.nc.us /opi/viewoffender.do?method=view&offenderID=0516177&searchOffenderId=0516177& searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1; Fed. R. Evid. 201. The Plaintiff is reminded that it is his responsibility to keep the Court apprised of his current address at all times. [<u>See</u> Doc. 6]. The failure to do so may result in this action's dismissal for lack of prosecution.

The Plaintiff names as Defendants: Monica Bond, the North Carolina Department of Public Safety (NCDPS) chief disciplinary hearing officer; Jerry Laws, a disciplinary hearing officer (DHO); FNU Honeycut, the Alexander CI chief superintendent; FNU Duncan, the Alexander CI superintendent of programs; FNU Harrold, and FNU Emid, correctional sergeants; FNU Moss, a correctional lieutenant; Darren Daves, Chris Biecker, and FNU Poteat, unit managers; Brad Williams, a case manager; FNU Davis, FNU Causby, and John Does 1-4, correctional officers; and FNU Simms, a psychologist social worker.[2]  The Plaintiff describes his claims as follows: "[f]ailure to protect, violation of Due Process, right to property & liberty protection, respondeat superior, deliberate indifference, intentional infliction of emotional distress, misprision,[3] malfeasance,[4] failure to train, retaliation, excessive force,

---

[2] The Plaintiff purports to sue all of the Defendants in their individual and official capacities except for Defendants Bond and Laws, for whom he does not specify whether he is suing in their official capacities, individual capacities, or both.  [Doc. 1 at 3].

[3] This appears to refer to 18 U.S.C. § 4, a criminal statute, which provides the Plaintiff with no private cause of action.  See generally Diamond v. Charles, 476 U.S. 54, 64–65 (1986) ("A private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); see, e.g., Hunter v. Holsinger, No. 5:15-cv-00043, 2016 WL 1169308, at *8 (W.D. Va. Feb. 19, 2016) (dismissing claims asserted pursuant to 18 U.S.C. § 4), report and recommendation adopted, No. 5:15-CV-00043, 2016 WL 1223347 (W.D. Va. Mar. 24, 2016).

[4] The Court is unable to determine the nature of this claim.  See generally Pliler v. Ford, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to pro se litigants."); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (federal courts performing their duties of construing pro se pleadings are not required to be "mind readers" or advocates for pro se litigants).

malpractice, cruel & unusual punishment." [Doc. 1 at 6]. He seeks the restoration of his "loss time;" compensatory, nominal, and punitive damages; injunctive relief; and a jury trial. [Id. at 1, 11].

## II.    STANDARD OF REVIEW

Because the Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see 28 U.S.C. § 1915A (requiring frivolity review for prisoners' civil actions seeking redress from governmental entities, officers, or employees).

In its frivolity review, a court must determine whether a complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

### A. Parties

The Complaint contains allegations regarding individuals who are not named as defendants. [See, e.g., Doc. 1 at 6, 8-9 (referring to Huffman, Smith, Hoffman, Poarch, Deloca, Tucker, Wagner)]. These claims cannot proceed. See generally Fed. R. Civ. P. 10(a) (requiring the title of the complaint to name all parties); see, e.g., Shine v. Charlotte Mecklenburg Police Dep't, No. 3:17-cv-306-FDW, 2018 WL 2943456 (W.D.N.C. June 12, 2018) (dismissing as nullities the allegations against individuals not named as defendants in the caption as required by Rule 10(a)).

The Plaintiff also uses vague terms rather than identifying the individual(s) involved in each allegation. [see, e.g., Doc. 1 at 7 (referring to "staff")]. Such claims are too vague and conclusory to proceed insofar as the Court is unable to determine the Defendant(s) to whom these allegations refer. See Fed. R. Civ. P. 8(a)(2) (requiring a "short and plain statement of the claim showing that the pleader is entitled to relief"); Simpson v. Welch,

900 F.2d 33, 35 (4th Cir. 1990) (conclusory allegations, unsupported by specific allegations of material fact are not sufficient); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). Further, to the extent that these allegations refer to non-parties, they are nullities for the reasons discussed *supra*.

The Plaintiff purports to sue Defendants, who are state officials, in their individual and official capacities. However, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Dep't of State Police, 491 U.S. 58, 71 (1989). Because a state is not a "person" under § 1983, state officials acting in their official capacities cannot be sued for damages thereunder. Allen v. Cooper, No. 1:19-cv-794, 2019 WL 6255220, at *2 (M.D.N.C. Nov. 22, 2019). Furthermore, the Eleventh Amendment bars suits for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003). As such, the Plaintiff's claims against Defendants in their official capacities do not survive initial review and will be dismissed.

**B.     Fourteenth Amendment**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. The first inquiry in any due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty that was accomplished by state action. Tigrett v. The Rector and Visitors of the Univ. of Va., 290 F.3d 620, 628 (4th Cir. 2002); Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988).

**1.     Property Loss**

Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Parratt v. Taylor, 451 U.S. 527 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517 (1984); see Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975) (under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act); Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner). The Parratt-

6

Hudson doctrine does not apply, however, to deprivations that are a "result of some established state procedure."  Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982).

The Plaintiff appears to claim that several Defendants violated due process by failing to inventory and store his property as required by NCDPS policies and procedures, resulting in its loss or destruction, and by stealing a pair of sneakers from him.  [Doc. 1 at 6-7, 10].  The Plaintiff appears to assert that the Defendants' mishandling and theft of his property resulted from unauthorized acts, rather than an established procedure.  Therefore, the Plaintiff has an adequate post-deprivation remedy, and the due process claims with regard to his alleged property losses are dismissed without prejudice.

### 2.    Disciplinary Proceedings

Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).  As a general matter, changes "in a prisoner's location,

variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); see Sandin, 515 U.S. at 486. However, a prisoner is entitled to procedural due process protections in a prison disciplinary proceeding that could impact the inmate's liberty interests, such as the loss of good time credits. See Thorpe v. Clarke, 37 F.4th 926 (4th Cir. 2022); see also Smith v. Collins, 964 F.3d 266, 275 (4th Cir. 2020) (inmates have no inherent constitutionally protected liberty interest in release from solitary confinement; to identify a state-created liberty interest, an inmate must show that there is a basis for an interest or expectation in state regulations for avoiding solitary such confinement, and that the conditions impose and atypical and significant hardship).

First, the Plaintiff appears to claim that he was denied due process with regard to a disciplinary infraction that occurred on June 8, 2022, which resulted in sanctions including the loss of gain time. [Doc. 1 at 7]. The due process claims regarding the June 8 infraction appear to be barred by Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the United States Supreme Court held as follows:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions

8

whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction and sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 485-87 (footnotes omitted; emphasis added). In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended the Heck rule to claims alleging constitutional deficiencies in prison disciplinary proceedings that have resulted in the loss of good time credits.

The Plaintiff admits that he lost good time in relation to the June 8 infraction, and he has not alleged that the disciplinary conviction has been reversed or otherwise invalidated.  If the Plaintiff were to prevail on his due process claims regarding the June 8 disciplinary charge, that would necessarily imply the invalidity of the disciplinary conviction.  See, e.g., Edwards, 520 U.S. at 646-47 (plaintiff's claims that he was denied the opportunity to put on a defense and that there was deceit and bias by the

hearing officer would necessarily imply the invalidity of the disciplinary proceedings); Moskos v. Hardee, 24 F.4th 289 (4th Cir. 2022) (prisoner could not bring § 1983 due process claim that prison officials fabricated evidence that resulted in his wrongful conviction of prison disciplinary infractions, causing him to lose good-time credits, because the disciplinary conviction had not been invalidated). Therefore, Plaintiff's claims regarding the June 8 infraction appear to be barred by Heck, and they are, therefore, dismissed.

Second, the Plaintiff appears to claim with regard to an infraction that occurred on June 23, 2022 that Defendants Daves, Emid and Laws did not give him the opportunity to be heard or to present evidence, including video footage; that Defendant Harrold was allowed to provide an amended statement regarding the incident; and that Defendant Bonds upheld the infraction on appeal. [Doc. 1 at 8].

The Plaintiff does not claim to have lost any good time credits with regards to the June 23 infraction, and his allegations are too vague and conclusory to plausibly claim that any other state-created liberty interest imposed an atypical and significant hardship on him with regard to that infraction such that due process protections would attach. See Thorpe, 37 F.4th at 926; Smith, 964 F.3d at 275. Accordingly, he has failed to

demonstrate that due process protections attach to the June 23 infraction, and his claims regarding that infraction are dismissed without prejudice.

### 3. Grievance

Liberally construing the Complaint, it appears that the Plaintiff is asserting a due process claim against Defendant Biecker for mishandling, or failing to answer, a grievance. [Doc. 1 at 6]. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). The Plaintiff's allegation that he submitted a grievance that went unanswered fails to rise to the level of a constitutional violation. Therefore, Plaintiff's claims that Defendant Biecker deprived him of access to the prison grievance procedure is dismissed for failure to state a claim.

### C. Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. Amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.

<u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). "Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment prohibition against cruel and unusual punishment." <u>Dixon v. Godinez</u>, 114 F.3d 640, 642 (7th Cir. 1997).

To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious— and subjective component—that the prison official acted with a sufficiently culpable state of mind. <u>Williams</u>, 77 F.3d at 761. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> A plaintiff must also allege "a serious or significant physical or emotional injury resulting from the challenged conditions." <u>Strickler v. Waters</u>, 989 F.2d 1375, 1381 (4th Cir. 1993).

In adjudicating an Eighth Amendment excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury

inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  Whitley, 475 U.S. at 320-21.

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them."  Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

The Plaintiff appears to claim that on June 24, 2022, Defendant Harrold used pepper spray without adequate justification in Defendant Daves' presence [Doc. 1 at 7], and that on September 7, 2022, six correctional officers,[5] in the presence of Defendants Williams and Emid, "smashed" him with a shield, beat his foot 20 or 30 times, and left him in full restraints for 12 hours [id. at 9].  Taking the allegations as true for the purposes of initial

---

[5] This appears to refer to Defendants Davis, Causby, and the four John Doe correctional officers.

review, and construing all inferences in Plaintiff's favor, the Eighth Amendment claims against Defendants Harrold, Daves, Davis, Causby, Williams, Emid, and the four John Doe correctional officers pass initial review as not clearly frivolous.

### D. Retaliation

The First Amendment right to free speech "includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for exercising that right." Suarez Corp. v. McGraw, 202 F.3d 676 (4th Cir. 2000). Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir. 1978). In order to state a colorable retaliation claim under § 1983, a plaintiff must allege: "(1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (citation omitted). Once the prisoner-plaintiff shows that his "protected conduct was a substantial motivating factor in a prison guard's decision to take adverse action," the burden then shifts to the defendant to prove a permissible basis for taking that action. Id. at 300. Bare or conclusory assertions of retaliation are insufficient to establish a retaliation

14

claim.  Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).  In the prison context, retaliation claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."  Id.

The Plaintiff appears to claim that he was retaliated against for serving Defendant Honeycutt with an "Affidavit & Record of Violations" on August 31, 2022 in that he was placed in a regular cell upon contracting COVID-19 on September 1, 2022, instead of a medical observation cell [Doc. 1 at 9]; he was placed in a remote cell away from camera view on September 6, 2022 [id.]; and he was subjected to excessive force on September 7 by "vindictive staff" [id. at 9-10].

Taking the allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, the Court concludes that the retaliation claims against Defendants Harrold, Daves, Davis, Causby, Williams, Emid, and the four John Doe correctional officers pass initial review as not clearly frivolous.   However, the remaining allegations are too vague and conclusory to make out a retaliation claim against any other Defendant, and such claims therefore are dismissed without prejudice.

15

### E.  Failure to Train

"It is well settled that 'supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (quoting Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994)).  A supervisor can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between his inaction and the constitutional injury."  Shaw, 13 F.3d at 799 (internal quotation marks omitted).

Here, the Plaintiff baldly asserts a claim for "failure to train."  [Doc. 1 at 6].  The Plaintiff's mere citation to an alleged failure to train is not supported by any factual allegations, and it is too vague and conclusory to proceed.  Accordingly, the Plaintiff's claim for failure to train is dismissed.

### F.  Policy Violations

The Plaintiff complains that various Defendants violated NCDPS policy and procedure.  However, a policy violation does not rise to the level of a § 1983 claim absent a plausible allegation of an underlying constitutional violation.  See generally Jackson v. Sampson, 536 F. App'x 356, 357 (4th Cir.

2013) (unpublished) (holding that "prison officials' failure to follow internal prison policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of constitutional violation"). Therefore, the Plaintiff's general claims for the violation of NCDPS policy and procedure are dismissed.

### G. Respondeat Superior

The Plaintiff asserts a claim of "respondeat superior." [Doc. 1 at 7]. To the extent that the Plaintiff is attempting to hold the Defendants liable for his § 1983 claims under a respondeat superior theory, such claims cannot proceed because respondeat superior does not apply to § 1983 actions. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (vicarious liability is inapplicable to § 1983 actions); Shaw, 13 F.3d at 798 (§ 1983 liability may be premised on supervisory liability, but not respondeat superior).

It appears that the Plaintiff may be attempting to state a respondeat superior claim under North Carolina law. See 28 U.S.C. § 1367 (addressing supplemental jurisdiction). Under North Carolina law, employers are generally liable for torts committed by their employees who are acting within the scope of their employment under the theory of respondeat superior. Matthews v. Food Lion, LLC, 205 N.C.App. 279, 282, 695 S.E.2d 828, 831 (2010). NCDPS, the individual Defendants' employer, is not named as a

defendant in the Complaint. Even if NCDPS were named as a defendant, however, the Plaintiff's respondeat superior claim would fail. NCDPS is a state agency, and suit against it is barred by sovereign immunity. See Kawai Am. Corp. v. Univ. of N.C. at Chapel Hill, 152 N.C. App. 163, 167, 567, S.E.2d 215, 218 (2002) (North Carolina's Tort Claims Act does not waive sovereign immunity for intentional torts); Harwood v. Johnson, 326 N.C. 231, 238, 388 S.E.2d 439, 443 (1990) ("The Department of Corrections[6] is a state agency created for the performance of essentially governmental functions, and a suit against this department is a suit against the State."). Therefore, the Plaintiff's respondeat superior claim is dismissed with prejudice.

## H. Intentional Infliction of Emotional Distress

The essential elements of intentional infliction of emotional distress are: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress. Foster v. Crandell, 181 N.C.App. 152, 167, 638 S.E.2d 526, 537 (2007), *disc. rev. denied*, 361 N.C. 567, 650 S.E.2d 602 (2007). The Plaintiff claims that he is a "chronic mental patient with PTSD amongst other diagnosed disorders" [Doc. 1 at 7]; that he went on a hunger strike on August 26, 2022 after being written up [id. at 9]; and

---

[6] The Department of Corrections is now known as the Department of Public Safety. Nunn v. N.C. Dep't of Public Safety, 227 N.C. App. 95, 96, 741 S.E.2d 481, 483 (2013).

that he attempted suicide on September 2, 2022 [id.].  The Plaintiff does not allege extreme or outrageous conduct by any Defendant that was intended to cause severe emotional distress.  The Plaintiff, therefore, has failed to state a claim for intentional infliction of emotional distress and this claim is dismissed.

## I.  Relief

The Plaintiff seeks injunctive relief, i.e. "to be emergency [sic] transferred to a PCON facility or promoted to medium custody."  [Doc. 1 at 11].  The Plaintiff's claims for injunctive relief appear to be moot because the Plaintiff has been transferred to another prison and the conditions about which he complains are unlikely to recur.  See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007) ("the transfer of an inmate from a unit or location where he is subject to [a] challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief.").

The Plaintiff also seeks the restoration of "loss time."  [Doc. 1 at 11].  However, such relief is not cognizable in this civil rights action.  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to

immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973); <u>see</u> <u>generally</u> 28 U.S.C. § 2254. Thus, to the extent that the Plaintiff is seeking to challenge the fact or duration of his confinement, he must do so, if at all, in a separate civil action.[7]

## IV. CONCLUSION

In sum, the Complaint has passed initial review against Defendants Harrold, Daves, Davis, Causby, Williams, Emid, and John Doe Correctional Officers 1-4 for retaliation and for violating the Eighth Amendment. The Plaintiff's respondeat superior claim is dismissed with prejudice, and the remaining claims are dismissed without prejudice.

### ORDER

**IT IS, THEREFORE, ORDERED** that:

1. The Complaint [Doc. 1] passes initial review against Defendants Harrold, Daves, Davis, Causby, Williams, Emid, and John Doe Correctional Officers 1-4 for retaliation and for violating the Eighth Amendment.

---

[7] The Court makes no determinations about the potential merit or procedural viability of such an action.

2. The Plaintiff's § 1983 claims for damages against Defendants in their official capacities, and respondeat superior claims are **DISMISSED WITH PREJUDICE.**

3. The remaining claims are **DISMISSED WITHOUT PREJUDICE**.

4. **IT IS FURTHER ORDERED** that the Clerk of Court shall commence the procedure for waiver of service as set forth in Local Civil Rule 4.3 for Defendants Harrold, Daves, Davis, Causby, Williams, Emid, and John Doe Correctional Officers 1-4, who are alleged to be current or former employees of the North Carolina Department of Public Safety.

The Clerk is respectfully instructed to mail the Plaintiff a blank § 2254 form, an Opt-In/ Opt-Out form pursuant to the Standing Order in Misc. Case. No. 3:19-mc-00060-FDW and a copy of this Order.

**IT IS SO ORDERED.**

Signed: January 25, 2023

Martin Reidinger
Chief United States District Judge