IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:22-cv-00134-MR

| | |
|---|---|
| JOHNNIE D. ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM OF** |
| vs. ) | **DECISION AND ORDER** |
| ) | |
| MONICA BOND, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 47].

**I. BACKGROUND**

The Plaintiff Johnnie D. Allen filed this action pursuant to 42 U.S.C. § 1983 addressing incidents that allegedly occurred at the Alexander Correctional Institution.[1] The Plaintiff's unverified Complaint [Doc. 1: Compl.] passed initial review against Defendants Justin Harrold, Darren Daves, Dylan Causby, Marcus Davis, Kaij Emig, Brad Williams, Jeffrey Clawson,

---

[1] The Plaintiff filed this action in the United States District Court for the Eastern District of North Carolina. The case was transferred to this Court where venue lies. He is presently incarcerated at the Harnett Correctional Institution.

Montgomery Lowery, Kevin Roten, and Johnathan Madden[2] for retaliation and for violating his Eighth Amendment rights. [Doc. 13: Initial Rev. Compl]. The Plaintiff seeks injunctive relief, damages, and a jury trial. [Doc. 1: Compl. at 11].

The Defendants filed a Motion for Summary Judgment. [Doc. 47: MSJ; see Doc. 49: Defendants' MSJ Exhibits]. Thereafter, the Court entered an Order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 51: Roseboro Order]. The Plaintiff has not responded, and the time to do so has expired. This matter is ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

---

[2] The Plaintiff did not identify Defendants Clawson, Lowery, Roten, and Madden by name in the Complaint. These Defendants are referred to as John Doe Correctional Officers 1 through 4 in the Order on initial review of the Complaint. [See Doc. 13].

2

(1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment.  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  To that end, only evidence admissible at trial may be considered by the

3

Court on summary judgment. Kennedy v. Joy Technologies, Inc., 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Facts, however, "must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 1776 (2007). As the Supreme Court has emphasized,

> "[w]hen the moving party has carried its burden under Rule 56(c), the opponent must do more than simply show there is some metaphysical doubt as to the material facts …. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-28, 106 S. Ct. 2505 (1986). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott, 550 U.S. at 380.

4

Case 5:22-cv-00134-MR    Document 53    Filed 06/03/24    Page 4 of 20

## III.  FACTUAL BACKGROUND

The following is a summary of the relevant portions of the undisputed forecast of evidence.[3]

On June 23, 2022, the Plaintiff was holding his food trap door open and refused Sergeant Harrold's orders to close it. [Doc. 49-16: Harrold Decl. at ¶ 3]. Officer Davis retrieved a handheld camera to record the incident. [Id. at ¶ 5]. Sergeant Harrold then gave the Plaintiff three more orders to comply and warned him that pepper spray would be used if he refused. [Id.]. The Plaintiff continued to refuse and Harrold administered oleoresin capsicum (OC) pepper spray towards the Plaintiff's face to gain compliance, pursuant to policy. [Id. at ¶ 6]. The Plaintiff removed his hand and the trap was secured. [Id.]. It was not Harrold's intention to harm the Plaintiff. [Id. at ¶ 7]. Sergeant Harrold notified the officer in charge and medical personnel of the incident. [Id. at ¶ 8].

On September 7, 2022, Sergeant Lowery observed the Plaintiff lying on the bed in his cell, non-responsive, and called for assistance. [Doc. 49-18: Lowery Decl. at ¶ 3]. Sergeant Emig came to the cell and called a Code Blue. [Id. at ¶¶ 3-4; Doc. 49-14: Emig Decl. at ¶¶ 3-6]. When sufficient staff

---

[3] Since Plaintiff's Complaint is not verified, it cannot be considered on summary judgment as a forecast of evidence.

5

Case 5:22-cv-00134-MR   Document 53   Filed 06/03/24   Page 5 of 20

had arrived, pursuant to policy, Sergeants Emig, Lowery, and Roten, Officer Madden, and others entered the cell to determine the Plaintiff's medical condition. [Doc. 49-14: Emig Decl. at ¶ 7; Doc. 49-21: Roten Decl. at ¶ 4]. Officer Madden attempted to place a shield on the Plaintiff for safety, pursuant to policy. [Doc. 49-14: Emig Decl. at ¶ 7; Doc. 49-21: Roten Decl. at ¶ 4]. The Plaintiff immediately became combative and struck Madden's shoulder with a closed fist. [Doc. 49-14: Emig Decl. at ¶ 7; Doc. 49-21: Roten Decl. at ¶ 4]. Lowery instructed staff to restrain the Plaintiff so that mechanical restraints could be applied. [Doc. 49-14: Emig Decl. at ¶ 8]. The Plaintiff continued to attempt to assault staff, despite being ordered to stop. [Id.; Doc. 49-21: Roten Decl. at ¶ 4]. In accordance with policy, Case Manager Williams used a closed fist to strike the Plaintiff's common peroneal nerve to stop Plaintiff from attempting to kick staff. [Doc. 49-22: Williams Decl. at ¶ 6]. When the Plaintiff stopped resisting, he was placed in full mechanical restraints and escorted away. [Doc. 49-14: Emig Decl. at ¶ 8; Doc. 49-12: Clawson Decl. at ¶ 4; Doc. 49-17: Jonas Decl. at ¶ 3; Doc. 49-21: Roten Decl. at ¶ 5; Doc. 49-22: Williams Decl. at ¶ 7]. When officers attempted to place the Plaintiff in a wheelchair so that he could be taken for a medical evaluation, the Plaintiff became irate, tried to stand up out of his wheelchair, and lunged at staff. [Doc. 49-18: Lowery Decl. at ¶ 6; Doc. 49-

6

22: Williams Decl. at ¶ 8; Doc. 49-17: Jonas Decl. at ¶ 4; Doc. 49-20: Rohlfing Decl. at ¶ 4]. Case Managers Rohlfing and Jonas[4] assisted in controlling the Plaintiff and escorted him to a medical room. [Doc. 49-17: Jonas Decl. at ¶ 4; Doc. 49-20: Rohlfing Decl. at ¶ 4]. After the Plaintiff was assessed, he was escorted to a cell without further incident. [Doc. 49-17: Jonas Decl. at ¶ 4; Doc. 49-18: Lowery Decl. at ¶ 6; Doc. 49-20: Rohlfing Decl. at ¶ 5].

The Plaintiff refused all "step-downs" of his full mechanical restraints until 10:45 p.m., at which time the restraints were removed. [Doc. 49-14: Emig Decl. at ¶ 10; Doc. 49-7: MSJ Ex at 2 (Incident Report); Doc. 49-7: MSJ Ex at 34 (mechanical restraint form)].

At the time of the September 7, 2022 incident, neither Emig, Lowery, Roten, nor Williams was aware that the Plaintiff had recently made a complaint to the warden. [Doc. 49-14: Emig Decl. at ¶ 14; Doc. 49-18: Lowery Decl. at ¶ 7; Doc. 49-21: Roten Decl. at ¶ 6; Doc. 49-22: Williams Decl. at ¶ 9]

Captain Daves was not in the immediate area of, and did not observe, the incidents on June 23 or September 7, 2022. [Doc. 49-13: Daves Decl. at ¶¶ 3-4]. Dylan Causby heard about the June 23rd incident after the fact, but

---

[4] Rohlfing and Jonas are not defendants in this case.

he did not observe it, and he no longer worked at Alexander CI in September 2022. [Doc. 49-11: Causby Decl. at ¶¶ 3, 5].

The Administrative Remedy Procedure (ARP) that applied at the relevant times required an inmate to satisfy a three-step process in order to fully exhaust a grievance. [Doc. 49-15: Grande Decl. at ¶¶ 5-6]. The final step in the exhaustion process is a Step 3 Order issued by the Inmate Grievance Resolution Board (IGRB). [Doc. 49-15: Grande Decl. at ¶ 9]. The IGRB did not issue any Step 3 Orders for the Plaintiff between January 1, 2022 and March 29, 2023, meaning that the Plaintiff did not fully exhaust any grievances during that time period. [Doc. 49-15: Grande Decl. at ¶¶ 10-11].

The Defendants have submitted video files containing footage from the relevant incidents. Video footage from the housing wing on June 23, 2022 depicts the following [MSJ Ex 1]:

| | |
|---|---|
| 4:54:10 | The trap door to Plaintiff's cell is visibly open. |
| 4:55:02 | Officers respond to the cell door. |
| 4:55:42 | The trap door is closed. |
| 4:59:05 | Additional officers arrive and appear to converse with the Plaintiff through the door. |
| 5:07:49 | A nurse arrives and appears to address the Plaintiff through the door. |
| 5:07:57 | The nurse leaves, and an officer remains stationed outside the cell door until the video ends at 5:10:05. |

8

Footage from a handheld camera on June 23, 2022 depicts the following [MSJ Exhibit 2]:

| | |
|---|---|
| 0:00:00 | An officer stands in front of Plaintiff's cell door; the Plaintiff's hand is on top of a food tray, holding the trap door open. |
| 0:00:07 | The officer unholsters his pepper spray and orders Plaintiff to secure his trap. |
| 0:00:09 | The officer again orders Plaintiff to secure his trap or pepper spray will be utilized. |
| 0:00:15 | The order and warning are repeated. |
| 0:00:20 | Pepper spray is administered through the trap. |
| 0:00:24 | The Plaintiff has turned away from the cell door and his hand is no longer in the trap. |
| 0:00:44 | The officer closes and locks the trap door. |
| 0:00:54 | The officer reports on the radio that OC pepper spray was used. |
| 0:04:11 | Additional officers arrive. |
| 0:05:09 | The Plaintiff is asked whether he is going to come out and see medical; Plaintiff waves his hand, curses, and says that pepper spray was unjustified. |

The overhead video footage from the restrictive housing unit on September 7, 2022 shows the following [MSJ Exhibit 8]:

| | |
|---|---|
| 11:05:46 | An officer peers into the cell through the window. |
| 11:06:36 | The officer appears to speak into his radio. |

9

| | |
|---|---|
| 11:07:38 | A second officer arrives and looks through the cell window. |
| 11:08:06 | The second officer appears to speak into his radio. |
| 11:10:02 | Staff begin to respond to the cell. |
| 11:10:25 | The cell door is opened with five officers present; three officers enter. |
| 11:10:31 | The two remaining officers rush into the cell. |
| 11:11:07 | Additional staff continue to arrive. |
| 11:14:14 | Plaintiff is escorted out of the cell. |

The handheld video camera footage from September 7, 2022 reflects the following [MSJ Ex 9]:

| | |
|---|---|
| 0:00:01 | The Plaintiff is standing in the hallway, surrounded by officers, as restraints are applied. |
| 0:00:15 | The Plaintiff says that someone slammed their weight and a shield on top of him. |
| 0:01:02 | The Plaintiff is escorted downstairs. |
| 0:03:16 | As additional restraints are applied, the Plaintiff jerks and says "don't touch me." |
| 0:03:50 | The Plaintiff shouts about the incident and officers repeatedly order him to calm down. |
| 0:04:33 | Officers attempt to place the Plaintiff in a wheelchair; he jerks and tries to stand up. |
| 0:04:35 | The Plaintiff is placed into the wheelchair while struggling and cursing; officers tell him to calm down. |

| | |
|---|---|
| 0:05:27 | The Plaintiff tells a nurse that officers beat on him. |
| 0:05:49 | The Plaintiff denies that he tried to assault staff. |
| 0:10:20 | The Plaintiff is taken to a room for medical evaluation in a wheelchair. |
| 0:12:01 | The Plaintiff is evaluated by nurses. |
| 0:13:07 | A radio conversation can be heard with an officer reporting that force was used. |
| 0:16:30 | The Plaintiff says that he woke up with five white men beating on him. |
| 0:17:53 | The Plaintiff says that he has not eaten in 13 days. |
| 0:18:00 | The Plaintiff says "no more assessments …, no more nothing," and "f--- these restraints … I'll die in these m-----f---ers." |
| 0:20:22 | The Plaintiff is escorted to a cell without further incident. |

## IV. DISCUSSION

### A. Exhaustion

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust his administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

11

exhausted." Id.  In Porter v. Nussle, the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life.  534 U.S. 516, 532 (2002).  The Court ruled that "exhaustion in cases covered by § 1997e(a) is now mandatory."  Id. at 524 (citation omitted).  The Porter Court stressed that, under the PLRA, exhaustion must take place before the commencement of the civil action to further the efficient administration of justice.  Id.

In Woodford v. Ngo, the Supreme Court held that the PLRA exhaustion requirement requires "proper" exhaustion: "Administrative law ... requir[es] proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).  Further, "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524).  Because exhaustion of administrative remedies is an affirmative defense, defendants have the burden of pleading and proving lack of exhaustion.  Id. at 216.

The North Carolina Department of Adult Corrections (NCDAC)[5] has established a three-step procedure governing submission and review of inmate grievances in its Administrative Remedies Procedures (ARP). Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). Inmates are required to "properly" exhaust administrative remedies in accordance with ARP. Woodford, 548 U.S. at 90; Moore, 517 F.3d at 726. An inmate does not exhaust his administrative remedies until he completes all three steps of the ARP. Moore, 517 F.3d at 726.

A prison official has the burden to prove an inmate's failure to exhaust available administrative remedies. Jones, 549 U.S. at 216. Once a defendant presents evidence of a failure to exhaust, the burden of proof shifts to the inmate to show, by a preponderance of the evidence, either that exhaustion occurred or that administrative remedies were unavailable. Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011).

The Defendants have forecast evidence that the Plaintiff failed to fully exhaust the ARP with regards to the incidents of June 23 and September 7, 2022. The Plaintiff has failed to forecast evidence that he exhausted his administrative remedies for those incidents, or that the ARP was not

---

[5] Previously known as the North Carolina Department of Public Safety (NCDPS).

available to him. Accordingly, the Defendants' Motion for Summary Judgment will be granted on this ground.[6]

### B. Merits

#### 1. Excessive Force

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. <u>Williams v. Benjamin</u>, 77 F.3d 756, 761 (4th Cir. 1996). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component—that the harm inflicted was sufficiently serious—and subjective component—that the prison official acted with a sufficiently culpable state of mind. <u>Williams</u>, 77 F.3d at 761. The Supreme Court has stated that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> A plaintiff must also allege

---

[6] Ordinarily, dismissal for failure to exhaust administrative remedies is without prejudice. However, the Plaintiff has also failed to establish the existence of a genuine dispute of material fact regarding the merit of his § 1983 claims as discussed *infra*. Therefore, the dismissal of this case will be with prejudice.

"a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

The Fourth Circuit recognizes a cause of action for bystander liability "premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416-17 (4th Cir. 2014) (quoting Randall v. Prince George's Cnty., 302 F.3d 188, 203 (4th Cir. 2002)). A "bystander officer" can be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall, 302 F.3d at 204.

The Plaintiff claims that on June 23, 2022, Defendant Harrold used excessive force and Defendant Davis failed to intervene, and that on September 7, 2022, officers Davis, Causby, Clawson, Lowery, Roten,

Madden, Williams and Emig used excessive force and/or failed to intervene, then left the Plaintiff in full restraints for 12 hours. [Doc. 1: Complaint at 7, 9].

As to the June 23, 2022 incident, the forecast of undisputed evidence demonstrates that Defendant Harrold used pepper spray to gain the Plaintiff's compliance after the Plaintiff failed to comply with multiple direct orders and warnings that pepper spray would be used and that Harrold sprayed the Plaintiff to gain compliance, and not to harm him. There is no forecast of evidence that Harrold violated the Eighth Amendment or that Davis failed to intervene in a violation of the Plaintiff's rights.

As to the September 7, 2022 incident, the forecast of undisputed evidence demonstrates that Defendants Madden, Emig, Lowery, Roten, and Williams responded to a Code Blue; that when the Plaintiff became combative, officers used reasonable force to restrain him and to prevent him from assaulting staff; that the Plaintiff refused "step-downs" of his mechanical restraints for 12 hours; and that the restraints were removed when the Plaintiff's refusals stopped. There is no forecast of evidence that Defendants Davis, Causby, and Daves were present or involved in the September 7th incidents. Further, the forecast of evidence demonstrates that the

16

Defendants who were involved did not violate the Eighth Amendment, nor did they fail to intervene in a violation of the Plaintiff's rights.

Accordingly, the Defendants' Motion for Summary Judgment will be granted on the Plaintiff's Eighth Amendment claims.

### 2. Retaliation

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted).

The Plaintiff alleges that The Defendants used excessive force on September 7, 2022 in retaliation for Plaintiff having made complaints to the warden around August 31, 2022. [Doc. 1: Compl. at 9].

The undisputed forecast of evidence demonstrates that none of the Defendants violated the Plaintiff's Eighth Amendment rights on September 7, 2022 as discussed in Section 1, *supra.* The Plaintiff has not forecast any evidence that he complained to the Warden on August 31, 2022, or that any Defendant took an adverse action against him in retaliation for the exercise of his First Amendment rights. The forecast of evidence demonstrates that Defendants Williams, Emig, Lowery, and Roten were not aware that the Plaintiff had made a recent complaint to the warden, that all of the Defendants responded reasonably to the Code Blue and to the Plaintiff's resistance, and that they used the minimal amount of force necessary to achieve legitimate correctional objectives and to avoid being assaulted. Accordingly, the Defendants' Motion for Summary Judgment will be granted on the Plaintiff's retaliation claim.

C.  **Qualified Immunity**

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531

(4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because the Plaintiff has not presented a forecast of evidence that any Defendant violated his constitutional rights, the Defendants are entitled to qualified immunity. As such, summary judgment for the Defendants would also be proper on this ground.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' Motion for Summary Judgment is granted, and this action is dismissed with prejudice.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 47] is **GRANTED**, and this action is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Signed: June 3, 2024

Martin Reidinger
Chief United States District Judge